ABELE, J.
{¶ 1} This is an appeal from a Scioto County Common Pleas Court, Domestic Relations Division, judgment that granted a divorce to D. Dianna Eichenlaub, plaintiff below and appellee herein, and Randy R. Eichenlaub, defendant below and appellant herein. Appellant raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
"THE LOWER COURT IN ITS JUDGMENT ENTRY FINAL DECREE ERRED AND ABUSED ITS DISCRETION WHEN IT CONSIDERED THE PARTIES' FIRST MARRIAGE IN ITS ANALYSIS OF R.C. 3105.18(C)(1)(e)."
SECOND ASSIGNMENT OF ERROR:
"THE LOWER COURT IN ITS JUDGMENT ENTRY FINAL DECREE ERRED AND ABUSED ITS DISCRETION BY AWARDING PLAINTIFF-APPELLEE SPOUSAL SUPPORT FOR AN INDEFINITE TERM."
{¶ 2} The parties initially married in October 1990, and remained married until November 1998 when they dissolved their marriage. Following the dissolution, appellant and appellee continued to live together, until appellee left the home and stayed with a friend for a short period of time. During this time, appellee became pregnant. Shortly thereafter, appellee and appellant rekindled their relationship and remarried in October 2001.
{¶ 3} During the parties' marriage, appellee gave birth to the child conceived during the parties' period of separation. Also, two other children were born as issue of the marriage.
{¶ 4} In 2015, the parties' relationship deteriorated and they sought a divorce. On September 8, 2017, the trial court held a final divorce hearing. Appellee testified that she and appellant first married in October 1990, and remained married for eight years. Appellee stated that after the parties dissolved their marriage, appellant "lived with [her] continuously." She further explained, however, that at some point, she asked appellant to leave the home. He would not do so, however. Appellee related that she decided to stay with a friend, and that the parties reunited a short time later.[2]
{¶ 5} Appellee stated that for the past three years, she has worked as a full-time kindergarten aide and earns approximately $21,000 annually. Before that, she had no other meaningful employment.
{¶ 6} Appellant testified that appellee did not work outside the home during the marriage, but instead stayed home to care for the children. Appellant stated that appellee started working within the past few years as a school aide. Appellant claimed that appellee "has the education to do more if she chooses to."
{¶ 7} On December 4, 2017, the trial court granted the parties a divorce, divided the parties' property, and designated appellee the children's residential parent. The court also awarded appellee spousal support in the amount of $800 per month for an indefinite time period. Additionally, the court retained jurisdiction to modify the spousal support order. This appeal followed.
I
{¶ 8} Appellant's two assignments of error challenge the propriety of the trial court's spousal support award. For ease of discussion, we consider them together.
{¶ 9} In his first assignment of error, appellant asserts that the trial court erred and abused its discretion by considering the parties' first marriage when determining to award appellee spousal support. Appellant claims that nothing in the spousal support statute allows a trial court to consider a prior marriage, or a period of unmarried cohabitation, when it evaluates the propriety of a spousal support award. Appellant further maintains that once the trial court defined the term of the parties' marriage as October 27, 2001 through September 8, 2017, it could consider only that period of time when awarding spousal support. Appellant additionally asserts that when the parties dissolved their first marriage, the parties agreed to waive spousal support. Appellant thus contends that the trial court could not consider the duration of their first marriage when determining the propriety of a spousal support award following the termination of their second marriage.
{¶ 10} In his second assignment of error, appellant argues that the trial court abused its discretion by awarding appellee spousal support for an indefinite term.
A
STANDARD OF REVIEW
{¶ 11} Trial courts generally have broad discretion and "wide latitude" when evaluating the appropriateness, reasonableness, and amount of a spousal support award. E.g. , Kunkle v. Kunkle , 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990) ; Bolinger v. Bolinger , 49 Ohio St.3d 120, 122, 551 N.E.2d 157 (1990) ; Cherry v. Cherry, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981) ; Clifford v. Skaggs , 4th Dist. Gallia No. 17CA6, 2017-Ohio-8597, 2017 WL 5513569, ¶ 9. Consequently, a reviewing court will not reverse a trial court's spousal support decision absent an abuse of discretion. Clifford at ¶ 9 ; e.g. , Bechtol v. Bechtol , 49 Ohio St.3d 21, 24, 550 N.E.2d 178 (1990) ; Holcomb v. Holcomb , 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989). " '[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.' " State v. Kirkland , 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting State v. Brady , 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' " State v. Darmond , 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting State v. Morris , 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp. , 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is "highly deferential" and does not permit an appellate court to simply substitute its judgment for that of the trial court. State ex rel. Cincinnati Enquirer v. Hunter , 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29 (explaining that reviewing court "will not lightly substitute [its] interpretation for that of the issuing court"). Indeed, "[d]iscretion necessarily connotes a wide latitude of freedom of action on the part of the trial court, and a broad range of more or less tangible or quantifiable factors may enter into the trial court's determination. [Thus], two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion." McGee v. C & S Lounge , 108 Ohio App.3d 656, 661, 671 N.E.2d 589 (10th Dist. 1996). Accordingly, an appellant seeking to show that a trial court abused its discretion ordinarily bears a heavy burden. Griffith v. Purcell , 4th Dist. Scioto No. 97CA2512, 1998 WL 32483 (Jan. 26, 1998), fn.1.
B
R.C. 3105.18
{¶ 12} R.C. 3105.18(B) allows trial courts, upon a party's request and after distributing property, to award reasonable spousal support. R.C. 3105.18(C)(1) sets forth the factors that a trial court must consider when "determining whether spousal support is appropriate and reasonable, and [when] determining the nature, amount, and terms of payment, and duration of spousal support":
(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code ;
(b) The relative earning abilities of the parties;
(c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.
{¶ 13} A trial court that is evaluating the propriety of a spousal support award must consider all of the statutory factors and not base its determination upon any one factor taken in isolation. Kaechele v. Kaechele , 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. Additionally, although a trial court possesses broad discretion to determine whether spousal support is reasonable and appropriate, it must consider the statutory factors and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law. Kaechele at paragraph two of the syllabus. In the absence of a request for findings of fact and conclusions of law, however, Kaechele does not require the trial court to list and comment on each factor. Brown v. Brown , 4th Dist. Pike No. 02AP689, 2003-Ohio-304, 2003 WL 164602, ¶ 10. Rather, Kaechele and R.C. 3105.18(C) only require a trial court to reveal the basis for its award in either its judgment or the record. Id. ; Carman v. Carman , 109 Ohio App.3d 698, 704, 672 N.E.2d 1093 (12th Dist.1996). If the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. Chattree v. Chattree , 8th Dist. Cuyahoga, 2014-Ohio-489, 8 N.E.3d 390, ¶ 71.
C
PRIOR MARRIAGE
{¶ 14} In the case sub judice, we disagree with appellant that the spousal support statute did not allow the trial court to consider the parties' prior marriage when evaluating appellee's request for spousal support. R.C. 3105.18(C)(1)(n) expressly permits a court to consider "[a]ny other factor that the court expressly finds to be relevant and equitable." In the present case, the trial court cited R.C. 3105.18(C)(1)(n) and fully explained its rationale for considering the parties' first marriage. The court found that the period of separation between the parties' first and second marriages was "brief"[3] and that appellant nearly continuously provided the primary means of support for appellee "for close to 22 years."[4]
{¶ 15} Furthermore, appellant bases his argument that the trial court must use the same dates to define the duration of the parties' marriage for both spousal support and property division purposes. The property division statute, R.C. 3105.171, directs a trial court to equitably divide the parties' marital property. One factor a court must consider when dividing the parties' marital property is the duration of the marriage. R.C. 3105.171(F)(1). R.C. 3105.171(G) requires a trial court to "specify the dates it used in determining the meaning of 'duration of the marriage.' "
(2) "During the marriage" means whichever of the following is applicable:
(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.
R.C. 3105.171(A).
{¶ 16} "The duration of the marriage is critical in distinguishing marital, separate, and post-separation assets and liabilities, and determining appropriate dates for valuation." Eddy v. Eddy , 4th Dist. Washington No. 01CA20, 2002-Ohio-4345, 2002 WL 1943569, at ¶ 23, citing Berish v. Berish , 69 Ohio St.2d 318, 432 N.E.2d 183 (1982). Thus, in general, a "trial court may not arbitrarily select different dates to value different marital assets." Lones v. Lones , 4th Dist. Washington No. 96CA34, 1998 WL 12598 (Jan. 16, 1998), *4 ; accord Green v. Green , 4th Dist. Ross No. 97CA2333, 1998 WL 363840 (June 30, 1998). Instead, a trial court ordinarily should apply the same set of dates when valuing marital property. Kramer v. Kramer , 8th Dist. Cuyahoga No. 74166, 1999 WL 561527 (July 29, 1999). When a court chooses to use different dates, "the trial court must adequately explain its reasons." Weller v. Weller , 11th Dist. Geauga No. 2006-G-2723, 2007-Ohio-4964, 2007 WL 2759491, ¶ 29.
{¶ 17} Appellant claims that the foregoing principles also apply when a court considers spousal support. Appellant maintains that a trial court must use the same date identified under R.C. 3105.171(G) as the "duration of the marriage" when it considers spousal support, and that a court cannot consider different dates for spousal support purposes. Appellant does not, however, cite any authority to support his proposition.
{¶ 18} Courts have recognized that, for purposes of property division, the particular circumstances may demand that a trial court employ different dates when valuing the parties' property. Kachmar v. Kachmar, 7th Dist. Mahoning No. 08 MA 90, 2010-Ohio-1311, 2010 WL 1204798, ¶ 47 ("If the circumstances of a given case so require, the trial court may choose different dates for valuation purposes so long as the court adequately explains its reasons, and its decision does not constitute an abuse of discretion."); Budd v. Budd , 9th Dist. Summit No. 24485, 2009-Ohio-2674, 2009 WL 1607820, ¶ 12 ("If the trial court determines it is necessary to value certain marital assets from a different set of dates, it must adequately explain its reasons for choosing different valuation dates for those particular marital assets."); DeWitt v. DeWitt , 3rd Dist. Marion No. 9-02-42, 2003-Ohio-851, 2003 WL 490928, ¶ 19 ("in certain instances there may be an equitable reason for selecting a different date on which to value different marital assets."). Thus, even if we agreed with appellant that the trial court's definition of "duration of the marriage" for purposes of a property division also applies to its consideration of spousal support, circumstances may exist to support the use of different dates. See generally Berish v. Berish , 69 Ohio St.2d 318, 321, 23 O.O.3d 296, 432 N.E.2d 183, 185 (1982) ("In order to do equity, a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or de facto termination of the marriage, where reasonable under the facts and circumstances presented in a particular case. In this fashion, the trial court will have the necessary flexibility to exercise its discretion in making truly equitable awards consistent with legitimate expectations of the parties."); Saks v. Riga , 8th Dist. Cuyahoga No. 101091, 2014-Ohio-4930, 2014 WL 5762843, ¶ 16.
{¶ 19} In the case sub judice, after our review of the record we believe that the trial court sufficiently explained its reasons for considering circumstances that occurred outside the "duration of the marriage" when awarding appellee spousal support. The court noted that the parties had been married twice, with only a "brief" period of separation between the two, and that appellee essentially relied upon appellant "for financial assistance for close to 22 years." The court further observed that during the term of the parties' second marriage, appellant "financially provided for all three [children] and the entire family was dependent on his financial support." We believe, therefore, that the trial court cited rational reasons for considering circumstances that occurred outside the "duration of the marriage" that it had identified for purposes of property division.
D
SEPARATION AGREEMENT
{¶ 20} Appellant next argues that the trial court erred by considering the parties' prior marriage when the parties allegedly had entered into a separation agreement that provided neither party would receive spousal support. We initially note that appellant did not present any evidence during the trial court proceedings to support his assertion that when the parties dissolved their prior marriage, they agreed that neither party would receive spousal support. Furthermore, appellant did not argue during the trial court proceedings that the parties' alleged prior agreement that neither party would receive spousal support when they dissolved their first marriage means that the court could not consider the term of the parties' first marriage when evaluating the appropriateness and reasonableness of spousal support. It is well-settled that a party may not raise any new issues or legal theories for the first time on appeal. Stores Realty Co. v. Cleveland, 41 Ohio St.2d 41, 43, 322 N.E.2d 629 (1975). Thus, a litigant who fails to raise an argument before the trial court forfeits the right to raise that issue on appeal. Independence v. Office of the Cuyahoga Cty. Executive , 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30 (stating that "an appellant generally may not raise an argument on appeal that the appellant has not raised in the lower courts"); State v. Quarterman , 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 21 (explaining that defendant forfeited his constitutional challenge by failing to raise it during trial court proceedings); Gibson v. Meadow Gold Dairy , 88 Ohio St.3d 201, 204, 724 N.E.2d 787 (2000) (concluding that party waived arguments for purposes of appeal when party failed to raise those arguments during trial court proceedings); State ex rel. Gutierrez v. Trumbull Cty. Bd. of Elections , 65 Ohio St.3d 175, 177, 602 N.E.2d 622 (1992) (explaining that an appellant cannot "present * * * new arguments for the first time on appeal"); accord State ex rel. Jeffers v. Athens Cty. Commrs. , 4th Dist. Athens No. 15CA27, 2016-Ohio-8119, 2016 WL 7230928, fn.3 (stating that "[i]t is well-settled that failure to raise an argument in the trial court results in waiver of the argument for purposes of appeal"); State v. Anderson , 4th Dist. Washington No. 15CA28, 2016-Ohio-2704, 2016 WL 1643247, ¶ 24 (explaining that "arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal").
{¶ 21} Appellate courts may, however, consider a forfeited argument using a plain-error analysis. See Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife , 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27 (stating that reviewing court has discretion to consider forfeited constitutional challenges); see also Hill v. Urbana , 79 Ohio St.3d 130, 133-34, 679 N.E.2d 1109 (1997), citing In re M.D. , 38 Ohio St.3d 149, 527 N.E.2d 286 (1988), syllabus (stating that "[e]ven where [forfeiture] is clear, [appellate] court[s] reserve[ ] the right to consider constitutional challenges to the application of statutes in specific cases of plain error or where the rights and interests involved may warrant it' "); State v. Pyles , 7th Dist. Mahoning No. 13-MA-22, 2015-Ohio-5594, 2015 WL 9693891, ¶ 82, quoting State v. Jones , 7th Dist. No. 06-MA-109, 2008-Ohio-1541, 2008 WL 852071, ¶ 65 (explaining that the plain error doctrine " 'is a wholly discretionary doctrine' "); DeVan v. Cuyahoga Cty. Bd. of Revision , 8th Dist. Cuyahoga, 2015-Ohio-4279, 45 N.E.3d 661, ¶ 9 (noting that appellate court retains discretion to consider forfeited argument); see Rosales-Mireles v. United States, --- U.S. ----, 138 S.Ct. 1897, 1904, 201 L.Ed.2d 376 (2018) (indicating that court has discretion whether to recognize plain error).
{¶ 22} For the plain error doctrine to apply, the party claiming error must establish (1) that " 'an error, i.e., a deviation from a legal rule' " occurred, (2) that the error was " 'an "obvious" defect in the trial proceedings,' " and (3) that this obvious error affected substantial rights, i.e., the error " 'must have affected the outcome of the trial.' " State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, quoting State v. Barnes , 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002) ; Schade v. Carnegie Body Co. , 70 Ohio St.2d 207, 209, 436 N.E.2d 1001, 1003 (1982) ("A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."). For an error to be "plain" or "obvious," the error must be plain "under current law" "at the time of appellate consideration." Johnson v. United States , 520 U.S. 461, 467, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) ; accord Barnes , 94 Ohio St.3d at 27, 759 N.E.2d 1240 ; State v. G.C. , 10th Dist. Franklin No. 15AP-536, 2016-Ohio-717, 2016 WL 764409, ¶ 14.
{¶ 23} The plain error doctrine is not, however, readily invoked in civil cases. Instead, an appellate court "must proceed with the utmost caution" when applying the plain error doctrine in civil cases. Goldfuss v. Davidson , 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). The Ohio Supreme Court has set a "very high standard" for invoking the plain error doctrine in a civil case. Perez v. Falls Financial, Inc. , 87 Ohio St.3d 371, 721 N.E.2d 47 (2000). Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss , 79 Ohio St.3d at 122, 679 N.E.2d 1099 ; accord Gable v. Gates Mills , 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, ¶ 43. Moreover, appellate courts " 'should be hesitant to decide [forfeited errors] for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.' " Risner at ¶ 28, quoting Sizemore v. Smith , 6 Ohio St.3d 330, 332, 453 N.E.2d 632 (1983), fn. 2 ; accord Mark v. Mellott Mfg. Co., Inc. , 106 Ohio App.3d 571, 589, 666 N.E.2d 631 (4th Dist.1995) ("Litigants must not be permitted to hold their arguments in reserve for appeal, thus evading the trial court process."). Additionally, "[t]he plain error doctrine should never be applied to reverse a civil judgment * * * to allow litigation of issues which could easily have been raised and determined in the initial trial." Goldfuss, 79 Ohio St.3d at 122, 679 N.E.2d 1099.
{¶ 24} In the case sub judice, appellant failed to raise the issue surrounding the parties' separation agreement at a time when the trial court could have considered the matter. He does not, however, present an argument that the trial court plainly erred by failing to conclude that the parties' prior separation agreement means that the court could not consider the term of the parties' first marriage when evaluating the appropriateness and reasonableness of spousal support. We ordinarily will not craft a plain-error argument for an appellant who fails to do so. E.g. , Selbee v. Van Buskirk , 4th Dist. Scioto No. 16CA3777, 2018-Ohio-1262, 2018 WL 1612372, ¶ 34 ; Matter of K.W. , 4th Dist. Highland, 2018-Ohio-1933, --- N.E.3d ----, ¶ 94 ; Wilson v. Farahay , 4th Dist. Adams No. 14CA994, 2015-Ohio-2509, 2015 WL 3886438, ¶ 34 ; accord State v. Arnold, 9th Dist. Summit No. 24400, 2009-Ohio-2108, 2009 WL 1220654, ¶ 8 ("[T]his Court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.").
{¶ 25} Consequently, in view of the foregoing we believe that appellant forfeited this argument for purposes of appeal, and we decline to engage in a plain-error analysis on his behalf. In any event, we cannot state that the trial court's consideration of the length of the parties' first marriage, despite their alleged prior agreement that neither party would receive spousal support after dissolution of their first marriage, results in a miscarriage of justice. See generally Moore v. Moore , 83 Ohio App.3d 75, 78-79, 613 N.E.2d 1097, 1100 (9th Dist.1992) (determining that trial court did not erroneously consider term of parties' first marriage when awarding spousal support after second marriage ended).
{¶ 26} Consequently, we disagree with appellant that the trial court abused its discretion, or erred as a matter of law, by considering the parties' first marriage when awarding appellee spousal support.
E
INDEFINITE AWARD
{¶ 27} Appellant next argues that the trial court abused its discretion by ordering an indefinite term of spousal support. Appellant contends that the circumstances present in the case at bar do not warrant an indefinite award.
{¶ 28} Generally, a trial court should set a date certain for the termination of spousal support. In Kunkle , however, the Ohio Supreme Court created an exception to the general rule. The court held that an indefinite term of spousal support may be appropriate " * * * in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home." Kunkle , 51 Ohio St.3d at 69, 554 N.E.2d at 88. Thus, a trial "court may award indefinite spousal support if even one of these three factors is present." Leopold v. Leopold , 4th Dist. Washington No. 04CA14, 2005-Ohio-214, 2005 WL 121655, ¶ 37. Moreover, "[i]f any one of the exceptions set forth in Kunkle is present, then the trial court's decision to refrain from setting a termination date for spousal support will rarely be deemed an abuse of discretion." Mahoney v. Mahoney , 9th Dist. Medina No. 16CA0061-M, 2017-Ohio-7917, 2017 WL 4341006, ¶ 14.
{¶ 29} When, however, "a payee spouse has the resources, ability and potential to be self-supporting," the spousal support award should terminate within a definite period, "in order to place a definitive limit upon the parties' rights and responsibilities." Id. Thus, under Kunkle, in determining whether to set a specific termination date for an award of spousal support, the court first should determine whether the payee spouse has the resources, ability and potential to be self-supporting. Cornelius v. Cornelius , 4th Dist. Washington No. 12CA19, 2012-Ohio-6293, 2012 WL 6765604, ¶ 43, citing Yazdani-Isfehani v. Yazdani-Isfehani, 4th Dist. No. 08CA3, 2008-Ohio-4662, 2008 WL 4193635, ¶ 34 (Harsha, J., concurring).
{¶ 30} In the case at bar, appellant asserts that none of the Kunkle factors apply to his and appellee's relationship. Appellant contends that their marriage was not of a long duration, but rather, lasted only sixteen years. He further argues that neither party is of advanced age, and that even though appellee was a homemaker for part of the marriage, she resumed full-time work in 2015. Appellant further alleges that appellee has the resources, ability, and potential to be self-supporting.
{¶ 31} We do not agree with appellant that the trial court's decision to award appellee indefinite spousal support is unreasonable, arbitrary, or unconscionable. First, the trial court could have rationally concluded that appellee lacks the resources, ability, and potential to be self-supporting. The evidence illustrates that, although appellee recently started working as a kindergarten aide, the position does not hold much opportunity for a significant increase in salary. As it stands, appellee earns approximately $21,000 annually. Additionally, appellee continues to be the primary caregiver for the parties' three minor children. Consequently, the trial court could have reasonably concluded that appellee does not have the resources, ability, or potential to be self-supporting.
{¶ 32} Second, the trial court could have logically determined that appellee "was a homemaker-spouse with little opportunity to develop meaningful employment outside the home." Kunkle , 51 Ohio St.3d at 69, 554 N.E.2d 83. The evidence shows that appellee primarily cared for the children during the course of the parties' second marriage and that she did not have gainful employment outside of the home during the sixteen-year marriage. The existence of this one factor alone illustrates that the trial court did not abuse its discretion by awarding appellee indefinite child support. Mahoney ; Leopold .
{¶ 33} Furthermore, we observe that the trial court retained jurisdiction to modify the spousal support award. Courts have determined that "the failure to assign a termination date is not an indefinite award where the court retains continuing jurisdiction to modify spousal support based upon a change in circumstances." Kolar v. Kolar , 9th Dist. Summit No. 28510, 2018-Ohio-2559, 2018 WL 3212690, ¶ 15 ; Coward v. Coward , 5th Dist. Licking No. 15-CA-46, 2016-Ohio-670, 2016 WL 704351 (stating the potential burden of a permanent spousal support order is ameliorated by the trial court's retention of jurisdiction to review and/or modify the award). Consequently, should circumstances change in the case at bar and appellee becomes self-supporting, the trial court retained jurisdiction to modify its spousal support award. Appellant, therefore, "is not without a remedy should future facts demonstrate a modification is warranted." Tyler v. Tyler , 8th Dist. Cuyahoga No. 93124, 2010-Ohio-1428, 2010 WL 1254278, ¶ 20. We thus disagree with appellant that the trial court abused its discretion by awarding appellee indefinite spousal support.
{¶ 34} Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.
Hoover, P.J. & McFarland, J.: Concur in Judgment & Opinion

Appellee did not indicate the number of weeks, months, or years that she lived apart from appellant. Her testimony indicates that the time was brief.

Although the trial court does not set forth the precise amount of time that elapsed between the parties' two marriages, appellee's testimony indicates that appellant continuously lived with her, except for the period of time when she lived with a friend.

The trial court does not explain precisely how it arrived at this 22-year figure, but it appears to be a combination of the parties' sixteen-year marriage and part of the parties' prior marriage and/or period of separation with cohabitation.