[Cite as *In re Z.C.*, 2020-Ohio-3635.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

IN THE MATTER OF:                    :

   Z.C.                              :    Case No.   19CA3693

[HEIDI CARTER]                       :

   VS.                               :    DECISION AND JUDGMENT ENTRY

[SHAWN CAREY]                        :

_____

APPEARANCES:

James T. Boulger, Chillicothe, Ohio, for Appellant.

Bernard Yavich, Columbus, Ohio, for Appellee[1].

_____

CIVIL CASE FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED:   6-26-20
ABELE, J.

    **{¶ 1}** This is an appeal from a Ross County Common Pleas Court, Juvenile Division, judgment

that denied a motion to modify child support filed by Heidi Carter, appellant herein, and in favor of

Shawn Carey, appellee herein.   Appellant assigns one error for review:

> "THE TRIAL COURT'S DENIAL OF THE APPELLANT'S MOTION TO
> MODIFY CHILD SUPPORT FOR THE MINOR CHILD Z.C.
> CONSTITUTED AN ABUSE OF DISCRETION, THE COURT HAVING
> FAILED TO COMPLY WITH THE STATUTORY REQUIREMENTS
> SET FORTH IN R.C. SECTIONS 3119.22, 3119.23 AND 3119.79."

_____

    [1]   Appellee's brief does not appear to comply with Local Rule 16 (I) (briefs shall conform to App.R. 19 and contain, under appropriate headings a table of contents with page references, a table of cases alphabetically arranged, statutes and other authorities, with references to pages where cited).   Nevertheless, in the interest of justice we will consider appellee's arguments.

{¶ 2} The parties are the biological parents of three children: Zachary (an adult), Z.C.(a minor), and Zo.C. (a minor). The two minor children were the subject of 2017 dependency actions, 2017DEP76 (Z.C.) and 2017DEP77 (Zo.C.). The adult child is the subject of a child support case (2006CA227) in which appellee owes an arrearage in excess of $23,000.

{¶ 3} Initially, the trial court awarded custody of the two minor children to appellee. However, on September 13, 2018 in 2017DEP77, the court adopted the parties' agreement that (1) appellee remain the primary residential parent of Zo.C., (2) appellant become the primary residential parent of Z.C., (3) the parents enjoy standard companionship rights with the children, (4) the parties withdraw all contempt motions, (5) the agency terminate protective services, and (6) "previous child support orders were vacated with respect to these children." In particular, the magistrate noted that "[t]he Court finds that an award of child support would not be in the best interests of the minor child for the reason that Father will be the primary residential parent of the minor child's sibling and will be responsible for her care and that Mother is likely to receive a Supplemental Security Income check on behalf of the minor child. All previous arrears shall remain and shall be paid at the current rate." Further, the magistrate found: "In the event an award of child support is necessary due to the child receiving cash benefits from the State of Ohio, the following provisions apply: Father must immediately notify, and Mother may notify the CSEA of any reason for which the support order should terminate."

{¶ 4} On December 11, 2018, appellant filed a motion for contempt and a motion to modify the arrearage payments in 06CA227. Appellant stated: "The change I want the Court to order is [a] current support order of zero per month been changed to what the Defendant receives from me of

$175.00 or I ask to run the income guidelines accordingly for one child determined by employment wages which is fair and to the best interest of the children. Per the O.R.C. - I am entitled to child support." As for the circumstances that had allegedly changed, appellant stated "Mr. Carey works all year around. His estimated monthly income alone is $4,000.00 per month not including the $175.00 he receives as being the residential parent to our daughter [Zo.C.] from my SSDI dependent claim." On February 4, 2019, appellee filed a motion to dismiss and on March 13, 2019, appellee filed a motion for contempt.

{¶ 5} Apparently, on May 20, 2019 an Administrative Adjustment Recommendation was completed and appellee subsequently requested a mistake of fact hearing. Appellee, however, failed to appear at the hearing and the hearing officer affirmed the Administrative Adjustment Recommendation.

{¶ 6} On June 20, 2019, appellant filed a motion in 2017DEP76 to modify child support for Z.C. and asserted that a substantial change in circumstances had occurred since the previous order. In the alternative, appellant requested that the trial court vacate the portion of the September 13, 2018 judgment that pertains to child support because "it was secured through fraud, misrepresentation and/or misconduct on the part of the father."

{¶ 7} On July 12, 2019, the trial court overruled appellant's December 11, 2018 motion, as well as appellee's March 13, 2019 and March 18, 2019 motions. The court determined, however, that appellant's May 30, 2019 contempt motion had merit because appellee had disobeyed the parenting time order. Thus, the court sentenced appellee to serve ten days in jail, but suspended the sentence on the condition that appellee pay court costs and fully comply with the order.

{¶ 8} On July 15, 2019, the child support issue (2017DEP076) and child support arrearage

issue (2006CS227) came on for a hearing to consider the appellee's objection to the administrative order. Appellee testified that Zo.C. is a product of the relationship with appellant and that he serves as Zo.C.'s custodial parent. Appellee explained that Z.C., another child from his relationship with appellant, lives with appellant and appellant serves as Z.C.'s custodial parent. Appellee also explained that he pays for health insurance for Zo.C. and Z.C. Appellee and appellant also have a third child, Zachary, an adult who does not reside with either party. Appellee further testified that he is a union employee, works at the ACON plant and received $30,000 in income for 2018. Appellee pointed out that although the CSEA calculated $58,000 in income in early 2019, appellee did not actually earn $58,000 in 2018 or in 2019. Instead, appellee explained that from January through July 2019 he worked 40 hours per week at an hourly wage of $26.43, but that position ended in July and for the remainder of 2019 he received $535 per week for unemployment compensation.

{¶ 9} Appellant testified that (1) she lives with four children, including Z.C., (2) she was last employed in 2013 and earned approximately $28,000, (3) since 2013, she receives approximately $1,477 per month for social security disability payments, (4) she receives $108 per month for each of her five minor children, and (5) Z.C. receives $582.42 per month for partial disability compensation. Appellant further testified that she is a college graduate, two quarters from a master's degree, and engaged in an internship at the Ohio Supreme Court. Appellant expected to "be eventually fully employed" through Opportunities for Ohioans with Disabilities. Appellant also stated that she resigned from a position with the state in 2013, but intended to be employed at the end of November.

{¶ 10} South Central Ohio Job and Family Services staff attorney Karen DeMers testified that, although she was not involved in the child support computation, in 2017DEP076 the income attributed to appellee was $37,801.36, then "[t]here was an adjustment for other minor children, and, the adjusted

annual gross income was $34,198.15. For appellant, the annual income from her disability is $17,280, and when adjusted for other children, appellee's annual gross income is $15,517.44. DeMers testified that appellee objected to this computation and the matter was scheduled for hearing, but appellee failed to appear. Thus, appellee's objection was overruled. As for the 06CA227 arrearage, DeMers testified that the total arrears as of July 31, 2019 was $23,040.76. At the conclusion of the hearing, the trial court stated "One clear error is that this is not a split custody calculation and it should be. So whatever Mr. Carey would owe, would be offset by what Heidi would owe him. So there needs to be a new calculation on everybody."

{¶ 11} The trial court's September 16, 2019 entry provides that the matter came on for hearing to consider the issues of current child support and the arrearage. First, the court held that, under the circumstances present in the case at bar, the payment of any current child support consistent with the statutory guideline "would be unjust, inappropriate and not in the best interest of the minor children" for the following reasons:

1. On August 16, 2018 the father [appellee] and mother [appellant] agreed in writing and in open court in case numbers 2017DEP076 and 2017DEP077, that neither party would be obligated to pay child support to the other for the reasons that appellee is the primary residential parent for one of the parties minor children and is primarily responsible for that child's care and the mother is the primary residential parent of the parties other minor child and responsible for that child's care * * *;

2. The mother has not provided any evidence that the parties' financial status has changed significantly since August/September of 2018;

3. The mother receives other social security benefits for other minor children living with her;

4. The mother has several post high school, college degrees and she is voluntarily under employed;

5. The Court has decided to increase the father's monthly payment on the child support arrears owed to the mother.

Thus, the trial court determined, inter alia, that in view of the fact that the parties "agreed in writing and in open court" that neither party pay support because each party is a residential parent of one of their minor children, the court overruled appellant's motion and vacated the July 15, 2019 Revised Child Support Order. The court also added that "so long as the father is the residential parent of [Zo.C.] and/or [Z.C.], the father shall pay the sum of $300.00 per month * * * towards his child support arrearage in case number 2006CS227 until those arrears are paid in full." This appeal followed.

{¶ 12} In her sole assignment of error, appellant asserts that the trial court's denial of her motion to modify child support constitutes an abuse of discretion. In particular, appellant claims that the court failed to comply with the various statutory requirements in R.C. Sections 3119.22, 3119.23 and 3119.79 because the amount calculated under the worksheet is more than 10 percent greater than the zero amount of child support set forth in the September 13, 2018 judgment.

{¶ 13} In general, appellate courts will not reverse trial court decisions that relate to child support matters unless the court abused its discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, ¶ 9; *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). *See also Martindale v. Martindale,* 4th Dist. Athens No. 18CA17, 2019-Ohio-3028, ¶ 42. "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a '"sound reasoning process."'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407,

972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is "highly deferential" and does not permit an appellate court to simply substitute its judgment for that of the trial court. *State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29. Indeed, "[d]iscretion necessarily connotes a wide latitude of freedom of action on the part of the trial court, and a broad range of more or less tangible or quantifiable factors may enter into the trial court's determination. [Thus], two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion." *McGee v. C & S Lounge*, 108 Ohio App.3d 656, 661, 671 N.E.2d 589 (10th Dist.1996). Consequently, an appellant who seeks to show that a trial court abused its discretion bears a heavy burden. *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380, ¶ 11 (4th Dist.).

{¶ 14} The purpose of Ohio's statutory child support system is to protect children and to promote their best interests. *Harmon v. Radcliff*, 12th Dist. Butler No. CA2017-04-047, 2017-Ohio-8682, ¶ 56. To that end, the Revised Code provides a comprehensive framework to determine the optimal financial support that parents should pay for their children. See R.C. Chapter 3119. Relevant here, under R.C. 3119.22 a trial court:

> may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet would be unjust or inappropriate and therefore not in the best interest of the child.

R.C. 3119.23 specifies factors to consider for deviation from a child support obligation:

> The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:

ROSS, 19CA3693

(A) Special and unusual needs of the child or children, including needs arising from the physical or psychological condition of the child or children;

(B) Other court-ordered payments;

(C) Extended parenting time or extraordinary costs associated with parenting time, including extraordinary travel expenses when exchanging the child or children for parenting time;

(D) The financial resources and the earning ability of the child or children;

(E) The relative financial resources, including the disparity in income between parties or households, other assets, and the needs of each parent;

(F) The obligee's income, if the obligee's annual income is equal to or less than one hundred per cent of the federal poverty level;

(G) Benefits that either parent receives from remarriage or sharing living expenses with another person;

(H) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;

(I) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;

(J) Extraordinary work-related expenses incurred by either parent;

(K) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;

(L) The educational opportunities that would have been available to the child had the circumstances requiring a child support order not arisen;

(M) The responsibility of each parent for the support of others, including support of a child or children with disabilities who are not subject to the support order;

(N) Post-secondary educational expenses paid for by a parent for the parent's own child or children, regardless of whether the child or children are emancipated;

(O) Costs incurred or reasonably anticipated to be incurred by the parents in compliance with court-ordered reunification efforts in child abuse, neglect, or dependency cases;

(P) Extraordinary child care costs required for the child or children that exceed the maximum state-wide average cost estimate provided in division (O)(1)(d) of section 3119.05 of the Revised Code including extraordinary costs associated with caring for a child or children with specialized physical, psychological, or educational needs;

(Q) Any other relevant factor.

If the court grants a deviation based on division (Q) of this section, it shall specifically state in the order the facts that are the basis for the deviation.

R.C. 3119.79 also speaks to a change of circumstances that require modification of a child support award:

(A) If an obligor or obligee under a child support order requests that the court modify the amount of child support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

A.

{¶ 15} As set forth above, in the case sub judice the trial court concluded that, although appellee's calculated child support guideline obligation would require a monthly support payment, in this case payment of support consistent with the guidelines would be unjust, inappropriate, and not in the best interest of the children. See R.C. 3119.22. The court identified several reasons for its decision. First, the court pointed out that the parties previously agreed, in writing and in open court, that neither party would be obligated to pay child support to the other in view of the fact that appellee is the primary residential parent for one child, and is primarily responsible for that child's care, and appellant is the primary residential parent of the parties other minor child, and is responsible for that

ROSS, 19CA3693

child's care.   Appellant argues, however,  that (1) the amount calculated under the split custody worksheet is more than 10 percent greater than the zero child support amount in the September 13, 2018 entry, and (2) *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 679 N.E.2d 266 (1997), holds that, despite the parties' prior agreement of zero support, the court should not require appellant to show a substantial change in circumstances beyond the 10 percent difference.   *DePalmo* at 540-541.

{¶ 16} In *DePalmo*, the Ohio Supreme Court concluded that, whether establishing an initial child support order or modifying an order based on an agreement between the parties that does not include an order for the payment of child support, courts must nevertheless apply the Child Support Guidelines as set out in *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992).   Thus, when a court is asked to modify a child support order, the court must apply the ten percent test and the *Marker* standards irrespective of whether the original support order was zero.   *DePalmo* at 540-541.   In so holding, the court observed that, although the law favors settlements, "the difficult issue of child support may result in agreements that are suspect.   In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures.   The compromise may be in the best interest of the parents but not of the child.   Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support."   *DePalmo* at 540, citing *Martin v. Martin*, 66 Ohio St.3d 110, 115, 609 N.E.2d 537 (1993).   Therefore, "[t]he trial court has the obligation to test any proposal of the parents to see if it meets the Child Support Guidelines under the *Marker* standard even if the parties agree between themselves to a different amount or agree that one party should assume all support."   *Id.*   However, it is important to recognize that the *DePalmo* court also indicated that trial courts may determine that a guideline amount is unjust or inappropriate, and not in a child's best interest.   *Id.*

ROSS, 19CA3693

{¶ 17} In the case sub judice, the trial court observed that the parties' agreement to forgo support is not simply an agreement to forgo support for a questionable or unsound reason or for a matter of convenience and to the child's detriment, but rather recognizes the fact that each party is a residential parent of one of the parties' two children. Thus, the parties' agreement obligates each party to be responsible for the care and support of the child in that person's custody. While we may agree with appellant's argument under other circumstances and if no sound basis existed for the parties' agreement to forgo child support, that is not the situation before us in the case at bar. Here, the parties' agreement is not a result of unequal bargaining power, economic pressure or a compromise achieved merely for the sake of peace." .

B.

{¶ 18} Appellant also argues that appellee misrepresented his income and failed to inform the court and appellant of his substantial change in income. Appellant cites *Osborne v. Osborne,* 81 Ohio App.3d 666, 611 N.E.2d 1003 (4th Dist.1992), in which the father's fraud and income misrepresentation justified an increase in child support retroactive to the date of the dissolution; accord *Hyder v. Hyder*, 4th Dist. Lawrence No. 01CA3, 2001-Ohio-2523.

{¶ 19} Appellant argues, however, that in light of appellee's failure to inform either his attorney or the court of the "dramatic change in his financial situation in 2018," the court's finding that appellant failed to present evidence that the party's financial status had changed significantly since 2018 is erroneous. Rather, appellant argues that appellee "brazenly ignored the court's August 29, 2019 direction to file his financial information and worksheet calculations with the court."

{¶ 20} Our review of the record reveals that appellee testified that he did not earn $58,000 in 2018 or in 2019. Instead, appellee testified that in 2019 from January until July he earned a $26.43

hourly wage, but that position ended in July 2019. At that point, appellee received unemployment compensation. Appellee thus argues that the trial court determined that appellant failed to provide any evidence that the parties' financial status had changed significantly. Furthermore, the trial court did not find any evidence of fraud, and we agree that the record does not indicate that any misreprentation occurred.

{¶ 21} Once again, after our review, and in light of our discussion above, we agree with the trial court's conclusion and find nothing in the record to support appellant's claim of fraud or change in financial status.

C.

{¶ 22} The appellant also asserts that the trial court referred to the fact that appellant receives social security benefits for her other minor children. Appellant, however, contends that no authority exists to support the proposition that appellant's receipt of social security payments for other minor children, and payments generated through her own SSD account, support a deviation from the child support worksheet. Instead, appellant argues that the receipt of such benefits should be accounted for under the child support worksheet. This, she argues, is akin to using child support payments that the obligee receives for children unrelated to the obligor as an item of gross income, a treatment that the worksheet does not authorize and is expressly excluded under 3109.01(C)(12)(c). [Sic. R.C. 3119.01(C)(12)(c)].

{¶ 23} As appellee points out, however, appellant received these payments at the time she explicitly agreed, in writing and in open court, that no child support payment should be required. Once again, we agree with the trial court's conclusion that the scenario in the case sub judice does not constitute a change in circumstances and does not constitute an abuse of the trial court's discretion.

D.

{¶ 24} In addition to the trial court's decision to deny appellant's child support modification request, the court also increased appellee's payment amount on the arrearage. Appellant contends that the court's decision to increase the installment payment for the arrearage for the adult child, however well-intentioned, should have no bearing on the calculation of appellee's present obligation to support minor child Z.C. Appellee counters that the increased child support arrearage payments are for an adult child no longer in the home and appellant is "free to use those monies in any way she wished. She was not using those monies to support the child for whom they were being received."

{¶ 25} We first observe that appellee's characterization is misplaced. The reason these arrearage payments exist is because appellee failed to fulfill his child support obligations for years, and the purpose of this payment is to repay appellant for the expenses that she incurred over the years. However, R.C. 3119.23(B) lists "other court-ordered payments" as a factor to consider for deviation from a child support obligation. Thus, a court ordered payment could also be a factor to consider when a child support order would be "unjust, inappropriate and not in the best interest of the minor children." See R.C. 3119.22. Nevertheless, we again recognize that in the case sub judice the trial court's decision primarily rests upon the concept that the parties' previous agreement, made in writing and in open court, precludes support modification, absent a substantial change in circumstances. We, therefore, find no abuse of discretion.

E.

{¶ 26} Finally, appellant asserts that the trial court erroneously determined that it would be unjust, inappropriate, and not in the children's best interest to establish a child support order because

of the fact that appellant possesses several college degrees and appears to be voluntarily underemployed.

{¶ 27} Whether a parent is voluntarily underemployed, and the amount of income that may be imputed to the parent, are matters that courts must determine based on the particular facts and circumstances of each case. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus. Furthermore, a parent who claims that the other is voluntarily underemployed has the burden of proof on the issue. *See King v. King,* 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21; *accord Ketchum v. Coleman*, 2d Dist. Miami No. 2013CA28, 2014-Ohio-858, ¶ 17. To determine whether an individual is voluntarily underemployed, " '[t]he test is not only whether the [underemployment] was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.'" *King* at ¶ 21, quoting *Woloch v. Foster,* 98 Ohio App.3d 806, 649 N.E.2d 918 (2d Dist.1994). Additionally, a trial court need not find that a parent "intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability" before it may find a parent voluntarily underemployed. *Rock*, 67 Ohio St.3d at 111. Rather, the principal "design and purpose" of the imputed income statute "are to protect and ensure the best interests of the children." *Id.; see Martindale v. Martindale,* 4th Dist. Athens No. 18CA17, 2019-Ohio-3028. Also, the Supreme Court of Ohio has stated that "an appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, and the trial court's reasons for imputing income to a child support obligor." *Rock v. Cabral, supra,* at 113, 616 N.E.2d 218.

{¶ 28} In the case at bar, we generally agree with appellant concerning appellant's alleged underemployment and imputed income. Typically, in order to determine appellant's potential income

in accordance with the statutory guidelines the trial court would have been required to explore this matter in full detail and make various factual findings.   However, as we set forth above, the trial court's decision in the case sub judice hinges upon the parties' previous agreement, made in writing and in open court, that provides for no support and precludes support modification absent a substantial change in circumstances.   Here, the court determined that no change of circumstances had occurred. Consequently, any error that the trial court arguably committed concerning the issue of voluntary underemployment and imputed income did not affect appellant's substantial rights and, thus, constitutes harmless error.   See Civ.R. 61.

{¶ 29} Accordingly, based upon the foregoing reasons, we hereby affirm the trial court's judgment.

JUDGMENT AFFIRMED.

ROSS, 19CA3693

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and the appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry these judgments into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

ROSS, 19CA3693

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.