[Cite as *Copley v. Copley*, 2020-Ohio-6669.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| JEFFREY W. COPLEY, | : | Case No. 19CA901 |
| Plaintiff-Appellant, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| CONNIE A. COPLEY, | : | |
| Defendant-Appellee. | : | **RELEASED 12/02/2020** |

_____
<u>APPEARANCES</u>:

Jennifer L. Ater, Chillicothe, Ohio, for appellant.

Richard M. Lewis, The Law Firm of Richard M. Lewis, LLC, Jackson, Ohio, for appellee.
_____
Hess, J.

{¶1} Jeffrey Copley appeals from a divorce decree issued by the Pike County Common Pleas Court. Mr. Copley contends that the trial court abused its discretion when it ordered him to pay $2,200 a month in temporary spousal support during the pendency of the divorce proceeding because it did not consider the factors in R.C. 3105.18(C)(1) or articulate the basis for its award, and the award is inappropriate, unreasonable, and excessive. However, the court did not have a duty to consider the R.C. 3105.18(C)(1) factors or make findings of fact and conclusions of law when it awarded temporary support, evidence in the record supports the award, and Mr. Copley failed to show that the award was excessive. Accordingly, we reject his contentions.

{¶2} Mr. Copley also contends that the trial court abused its discretion in various ways when it ordered him to indefinitely pay $2,200 a month in spousal support in the divorce decree. Mr. Copley asserts that the court erred by including $17,000 of gross

annual overtime wages in its calculation of his income, but that figure is reasonable given evidence of the overtime wages he earned during the marriage. Mr. Copley also asserts that the court failed to consider more than half of his monthly living expenses when it made the award. Although the trial court was not obligated to consider the parties' living expenses under R.C. 3105.18(C)(1), it did so, purporting to list in its spousal support decision all of the expenses to which the parties had testified. Once the court decided to consider the parties' living expenses, it acted unreasonably when it disregarded many of the expenses to which Mr. Copley testified without explanation. Accordingly, we conclude that the trial court abused its discretion when it made the indefinite support award, reverse that portion of its judgment, and remand for further proceedings consistent with this opinion. We affirm the judgment in all other respects.

## I. FACTS AND PROCEDURAL HISTORY

{¶3}   Jeffrey and Connie Copley married in February 1987 and have two adult children. In January 2017, Mr. Copley moved out of the marital home, and in November 2017, he filed a complaint for divorce. Ms. Copley filed an answer, a counterclaim for divorce, and a motion for temporary spousal support during the pendency of the divorce proceeding which she supported with her own affidavits. Mr. Copley, who had been voluntarily paying Ms. Copley $380 a week, opposed paying her more and submitted his own counter affidavits. The trial court ordered Mr. Copley to pay Ms. Copley $2,200 a month in temporary spousal support during the pendency of the proceeding. The parties had no marital debts and entered into a stipulated agreement regarding the division of property, and the court conducted a trial on the only contested issue—spousal support.

**{¶4}** Mr. Copley testified that he is 54 years old, is a high school graduate, and went to college for two semesters. He was in the Navy, worked at a uranium enrichment plant for 21 years, and has worked for Fluor BWXT Portsmouth, L.L.C., for 11 years. His hourly rate is $39.472, and he earns time and a half for overtime. He works 40 hours or more a week; he "very rarely" turns down overtime when it is available. Sometimes he goes months without overtime, but the "best time" for it is between May and August, and there have been "very few years" in which he did not have overtime. In 2015, he earned $19,131.40 from overtime. He was "sure" that he worked overtime in 2016 but did not recall how much. In 2017, he earned $15,180.88 from overtime. In 2018, he earned $46,652.30 from overtime, which was "unusual" and attributable to his employer combining two departments. In 2019, at the time of the April trial, he had worked 60 hours of overtime. Mr. Copley has a degenerated disc which causes back pain but does not prevent him from working, and he has pre-cancerous patches removed from his skin every six months. Mr. Copley testified that during the marriage, Ms. Copley's employment outside the home was sparse. He knew Ms. Copley had various health issues but testified that they did not limit her activities and that he encouraged her to work after their children were grown.

**{¶5}** Mr. Copley testified about his average expenses for electricity ($30/month), water ($28.33 or $30/month), vehicle maintenance ($100/month), gasoline ($100 or $112/month), a gym membership ($19.66 or $30/month), groceries ($300/month), dining out ($150/month), clothing ($150/month), charitable contributions ($80/month), insurance on a camper ($70/month), fuel oil ($81.25/month), a cell phone ($40/month), dry cleaning and laundry ($15/month), life insurance ($29.55/month), auto insurance ($98.50/month),

federal income taxes ($1,131.87/month), state income taxes ($198.08/month), Medicare withholding ($95.18/month), Social Security withholding ($406.97/month), union dues ($72.88/month), 401K contributions (6% of wages, estimated at $467.67/month), and health, dental, and vision insurance for him and Ms. Copley ($831.95/month). Once Ms. Copley is removed from his health, dental, and vision insurance, his monthly expense for those items will decrease to $418.81. Mr. Copley testified that in 2005, his parents transferred about four acres of land to him, but his mother still lives in the house on the land and pays the real estate taxes. Mr. Copley could live with her but instead pays $500 a month to rent her camper in the front yard; he plans to build a house on the property for himself.

{¶6} Ms. Copley's brother, Donnie Dyke, testified that Mr. Copley had told him a number of times that he preferred that Ms. Copley not work because it would "hurt him on his taxes," and "he made enough money to take care of things."

{¶7} Ms. Copley testified that she is 53 years old and is a high school graduate. During the marriage, she cared for the couple's children, house, and parents. Her work experience includes about a month of part-time work cleaning a post office and a few months of work at a Goodwill Industries retail store. She left Goodwill because she got pregnant, and Mr. Copley did not want her to work anymore. Ms. Copley testified that even after the couple's children were in school, Mr. Copley did not want her to work because she had enough to do with caring for the house and their parents, he made enough money to support them, and he did not want to move to a higher tax bracket. She did not seek employment after they separated. She spends four to five hours a day on housework, an hour a day caring for her animals, and about 20 hours a week helping

her 82-year-old mother. Ms. Copley testified that she has several health issues. She needs ongoing chiropractic treatment for neck and back pain and has migraines, muscle spasms, a condition that causes painful callouses on her feet which require surgical removal, daily anxiety attacks, depression, uterine tumors that cause vaginal pain, cysts throughout her breasts and right kidney, and fibromyalgia. However, she admitted that she is not disabled and that no doctor has told her to not work.

{¶8} Ms. Copley testified about her average expenses for real estate taxes ($800/year), homeowners' insurance ($800/year), electricity ($100/month), water ($60/month), fuel oil ($2,000/year), trash collection ($50/three months), a cell phone ($70/month), home phone/tv/internet ($200/month), groceries and sundries ($200/week), dining out ($100/week), clothing ($100/week), hair care ($30/month), vehicle maintenance ($40/two or three months), gasoline ($120/month), and car insurance ($112.00/six months). Under Mr. Copley's health insurance plan, she has out-of-pocket expenses of about $200 a month for medication, and she testified about the costs associated with getting her own insurance after the divorce. Ms. Copley testified that she attends church "[o]n and off" and donates "sometimes $40 and sometimes more."

{¶9} Richard Oestreich, Ph.D., CRC, a vocational consultant, performed a vocational assessment of Ms. Copley. Testing revealed that her reading or word recognition and arithmetic skills were at a fourth-grade level, and her spelling skills were at a fifth-grade level. Her vocational assets were that she presents well, has good social skills, and has performed well as a stay-at-home mother and homemaker. Her vocational deficits were that she had been out of the workforce for over 30 years, had never worked a full-time job, had some physical limitations which reduced her ability to lift heavy

objects, had no skill set to offer in the marketplace, tested below the high school range in academic achievement levels, was largely unable to use a computer to benefit an employer, and was 53 years old. Dr. Oestreich testified that Ms. Copley's vocational history was "very sparse" and unlikely to lead to employment now. He opined that she was capable of performing an unskilled job, such as retail clothing sorter, stocker, or child care worker. He placed her earning capacity at "$18,000 to start" and opined that she would "need about six months to find suitable employment."

{¶10} Abbey Palmer, D.C., testified that she provides chiropractic services to Ms. Copley for degenerative disc disease and misalignment of the spine. She recommends ongoing chiropractic care for her but not physical therapy or surgery. Dr. Palmer has not observed limitations in Ms. Copley's mobility that would prevent her from working but opined that "[a] lot of hard labor" would probably exacerbate her problems.

{¶11} In its spousal support decision, the court made findings on each of the factors in R.C. 3105.18(C)(1). Among other things, the court found that Mr. Copley's gross annual base wages were $82,101.76 based on a 40-hour work week. The court found that he regularly worked overtime in past years, that it was reasonable to expect that he would continue to have overtime income in the future, and that his gross annual overtime wages were $17,000. The court found Mr. Copley's gross annual wages and earning capacity was $99,101.76, and Ms. Copley's annual earning capacity was $18,000. Under its discussion of the parties' assets and liabilities, the court found they had no liabilities "other than, presumably, their attorney fees," but that no evidence was introduced on the amount of fees. The court stated that "[t]he parties each have living expenses, of course" and purported to list the "regular monthly living expenses" to which

each party had testified.  The trial court concluded it was appropriate and reasonable to award Ms. Copley $2,220 a month until she remarried or either party died but retained continuing jurisdiction over the issue of spousal support for the purpose of modifying the amount or terms of payment or terminating support based on a change of circumstances. The court issued a divorce decree that incorporated its spousal support decision.

## II.  ASSIGNMENT OF ERROR

{¶12}  Mr. Copley presents one assignment of error:

> The trial court erred and abused its discretion in its awards of temporary and permanent spousal support in the amounts and duration, as the awards are unreasonable, inappropriate, and excessive, and are arbitrary without a clear detailed basis.

## III.  LAW AND ANALYSIS

{¶13}  In his sole assignment of error, Mr. Copley contends that the trial court abused its discretion when it awarded temporary spousal support during the pendency of the divorce proceeding and indefinite spousal support in the divorce decree.

### A.  Standard of Review

{¶14}  "Trial courts generally enjoy broad discretion to determine spousal support issues." *Bolender v. Bolender*, 4th Dist. Adams No. 13CA984, 2014-Ohio-2136, ¶ 15. We review an award of temporary spousal support during the pendency of a divorce proceeding and an award of spousal support in a final divorce decree for an abuse of discretion, which exists when a decision is unreasonable, arbitrary, or unconscionable. *See id.* at ¶ 15, 28.

### B.  R.C. 3105.18

{¶15}  Under R.C. 3105.18(B), in a divorce proceeding the trial court "may award reasonable spousal support to either party" "upon the request of either party and after

the court determines the division or disbursement of property under section 3105.171 of the Revised Code."  The court may also "award reasonable temporary spousal support to either party" during the pendency of the proceeding.  R.C. 3105.18(B); *see also* Civ.R. 75(N)(1) ("When requested in the complaint, answer, or counterclaim, or by motion served with the pleading, upon satisfactory proof by affidavit duly filed with the clerk of the court, the court * * *, without oral hearing and for good cause shown, may grant a temporary order regarding spousal support to either of the parties for the party's sustenance and expenses during the suit * * *").

{¶16}  R.C. 3105.18(C)(1) states:

In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

## C. Temporary Spousal Support

**{¶17}** Mr. Copley asserts that the decision to award temporary spousal support during the pendency of the divorce proceeding was arbitrary because it contained no reference to the factors in R.C. 3105.18(C) and did not "set forth any reason for the amount of temporary spousal support awarded." He relies on *Longo v. Longo*, 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, to support his position. He also asserts that the award is "inappropriate, unreasonable and excessive."

**{¶18}** Courts have acknowledged that a " 'purpose of temporary support is "to preserve the status quo during the proceeding." ' " *Bolender*, 4th Dist. Adams No. 13CA984, 2014-Ohio-2136, ¶ 27, quoting *Ward v. Ward*, 10th Dist. Franklin No. 99AP-66, 2000 WL 552186, *5 (May 4, 2000), quoting *DiLacqua v. DiLacqua,* 88 Ohio App.3d 48, 54, 623 N.E.2d 118 (9th Dist.1993). "Temporary spousal support is also appropriate to provide for the financial needs of a spouse." *Id.*

**{¶19}** The trial court's failure to state that it considered the R.C. 3105.18(C)(1) factors or articulate the rationale for its temporary award does not render the award arbitrary. The R.C. 3105.18(C)(1) factors "govern whether an award of spousal support, and not temporary spousal support during the pendency of divorce, is appropriate." *Buzard v. Buzard*, 2d Dist. Clark No. 2011 CA 18, 2012-Ohio-2658, ¶ 31; *see also Deacon v. Deacon*, 8th Dist. Cuyahoga No. 91609, 2009-Ohio-2491, ¶ 49 ("Temporary spousal support need not be based on the factors in R.C. 3105.18(C), but only needs to be an amount that is 'reasonable' "). R.C. 3105.18 does not provide " 'a specific methodology' " that the trial court must follow in determining whether " 'an award of temporary spousal support is reasonable and how the amount of that award is to be decided.' " *Bolender* at ¶ 27, quoting *Ward* at *5. R.C. 3105.18 also does not mandate that the court issue findings of fact and conclusions of law when it awards temporary support, and Mr. Copley did not request them.

**{¶20}** *Longo* is not binding on this court, and we do not find it persuasive. In that case, the appellant asserted that the temporary spousal support award was insufficient. *Longo*, 11th Dist. Geauga No. 2004-G-2556, 2005-Ohio-2069, ¶ 70. The appellate court held the award was "fundamentally arbitrary" for a different reason. *Id.* at ¶ 72. Citing *Stafinsky v. Stafinsky*, 116 Ohio App.3d 781, 784, 689 N.E.2d 112 (11th Dist.1996), *Longo* stated that "R.C. 3105.18(C)(1) *requires* the trial court to review certain statutory factors in making its determination of spousal support and indicate the basis for the award in sufficient detail to facilitate adequate review." (Emphasis sic.) *Id.* at ¶ 71. The appellate court found that the trial court "did not consider all relevant factors set forth in R.C. 3105.18 and failed to provide a clear basis for the temporary award." *Id.* at ¶ 72.

However, the appellate court did not address the fact that R.C. 3105.18(C)(1) states that it applies to a determination of "whether spousal support is appropriate and reasonable" and does not mention temporary support during the pendency of a divorce proceeding. Moreover, the case *Longo* relied upon discussed the R.C. 3105.18(C)(1) factors in the context of a final spousal support award, not a temporary award made during the pendency of a divorce proceeding.  *See Stafinsky* at 784.

**{¶21}** The record contains evidence that supports the temporary spousal support award.  In affidavits in support of her motion for temporary support, Ms. Copley averred that she had not been employed outside the home during the over 30-year marriage, that she was currently unemployed, that her monthly expenses were $2,463.32, and that Mr. Copley's gross annual income was $122,708.82 ($10,225.74 a month).  [R. 12, 15, 35] In counter affidavits, Mr. Copley averred that his gross annual income was $89,855.63 ($7,487.97 a month) and that his monthly expenses (excluding $1,646.67 in voluntary support he had been giving Ms. Copley) were $5,984.75.  [R. 36]

**{¶22}** Regardless of which income figure the trial court accepted, it was reasonable to award Ms. Copley $2,200 a month to provide for her financial needs during the pendency of the proceeding given her lack of work history and expenses.  If Mr. Copley earned $10,225.74 a month, the $2,200 a month award would leave him with $8,025.74 a month, which was more than adequate to pay his claimed monthly expenses.  If Mr. Copley earned $7,487.97, it would have been impossible for the court to fashion an award that would allow both parties to pay their claimed monthly expenses, which totaled $8,448.07 ($2,463.32 + $5,984.75), and it was reasonable to award Ms. Copley about 30% of the income, which covered most but not all of her claimed

expenses. Mr. Copley's conclusory assertion that the temporary award was inappropriate, unreasonable, and excessive is insufficient to establish error. *See* App.R. 16(A)(7) (an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). Accordingly, we overrule the assignment of error to the extent it asserts that the trial court abused its discretion when it awarded temporary spousal support during the pendency of the proceeding.

## D. Indefinite Spousal Support

{¶23} Mr. Copley acknowledges that the trial court addressed the R.C. 3105.18(C)(1) factors before it awarded indefinite spousal support in the divorce decree and that "some factors could weigh in favor of an award of spousal support." However, he contends that the court "gave no practical consideration" to his ability to pay the amount awarded. He asserts that the court should not have imputed $17,000 in gross annual overtime income to him because the court did not explain how it derived that figure, and overtime is voluntary and not guaranteed. He also asserts that the court failed to consider more than half of his monthly living expenses even though it considered all of Ms. Copley's expenses. He maintains that the amount he "nets from his wages is equal to or even less than what [Ms. Copley] receives in untaxed spousal support on a monthly basis" and that the award "essentially forces him to continue to work significant and steady overtime, as he ages" and "live in a camper on his mother's property for the unforeseen future while [Ms. Copley] is able to enjoy remaining in the unencumbered marital residence." Mr. Copley also asserts that the indefinite duration of

the award is "unsupported and excessive, creating an undue financial hardship on him."

Finally, he contends that it is "impossible" for this court to discern the basis for the award

because aside from discussing the R.C. 3105.18(C)(1) factors, the trial court did not

provide "any reasons" to support the amount or duration of the award.

**{¶24}** "A trial court evaluating the propriety of a spousal support award must

consider all of the statutory factors and not base its determination upon any one factor

taken in isolation." *Martindale v. Martindale*, 4th Dist. Athens No. 18CA17, 2019-Ohio-

3028, ¶ 90, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988),

paragraph one of the syllabus.  Although the court has "broad discretion" to determine

whether a spousal support award "is reasonable and appropriate, it must consider the

statutory factors and must indicate the basis for a spousal support award in sufficient

detail to enable a reviewing court to determine that the award complies with the law." *Id.*,

citing *Kaechele* at paragraph two of the syllabus.  "In the absence of a request for

findings of fact and conclusions of law, however, *Kaechele* does not require the trial

court to list and comment on each factor." *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060,

120 N.E.3d 380, ¶ 13 (4th Dist.).  "Rather, *Kaechele* and R.C. 3105.18(C) only require a

trial court to reveal the basis for its award in either its judgment or the record." *Id.*  "If the

record reflects that the trial court considered the statutory factors, and if the judgment

contains details sufficient for a reviewing court to determine that the support award is

fair, equitable, and in accordance with the law, the reviewing court will uphold the

award." *Martindale* at ¶ 90, citing *Eichenlaub* at ¶ 13.

**{¶25}** The trial court's decision to include $17,000 in gross annual overtime

wages in its calculation of Mr. Copley's income was not unreasonable, arbitrary, or

unconscionable. Under R.C. 3105.18(C)(1)(a), the court was required to consider the parties' income "from all sources," and Mr. Copley's testimony indicates that he regularly earns overtime income. *See Wormsley v. Wormsley*, 3d Dist. Marion No. 9-14-04, 2014-Ohio-3086, ¶ 19 (trial court did not abuse its discretion by including a figure for overtime wages in calculating appellant's annual income because the parties testified that he "consistently worked overtime hours throughout the course of the marriage"). Specifically, he testified that there have been "very few years" in which he did not have overtime, that he "very rarely" turns overtime down, and that he has had overtime every year since at least 2015. He earned $19,131.40 from overtime in 2015, an unknown amount from overtime in 2016, $15,180.88 from overtime in 2017, and $46,652.30 from overtime in 2018, which was unusual. As of April 18, 2019, he had earned $3,552.48 in overtime in 2019, i.e., $39.472 hourly rate x 1.5 overtime rate x 60 hours, but he testified that the best time for overtime is between May and August. The $17,000 figure the trial court selected for gross annual overtime wages is less than the average overtime wages Mr. Copley earned in 2015 and 2017—the only typical years for which the court was given information.

{¶26} Mr. Copley's reliance on *Carey v. Carey*, 2d Dist. Clark No. 2002-CA-109, 2004-Ohio-770, to support his position that the trial court's consideration of overtime wages was improper is misplaced. In that case, the husband argued that the trial court abused its discretion in making an award of spousal support premised on him working 60 hours a week. *Id.* at ¶ 11, 18. The appellate court noted that in the context of child support, "[s]ome courts have held that an obligated parent should not be required to work more than a 40 hour week when an adequate support order could be made out of the

obligor's base salary." *Id.* at ¶ 13. However, the appellate court found "the better view is that a trial court may consider regular overtime pay in calculating the income of a spouse for purposes of setting child or spousal support." *Id.* at ¶ 18. The husband conceded that "he regularly received overtime pay" and that "working 40 or 50 hours a week is not unreasonable in light of his age and health" but argued that a "60-hour work week is excessively onerous." *Id.* The appellate court agreed. *Id.*

**{¶27}** In this case, unlike in *Carey*, the trial court did not premise its support award on one spouse having to regularly work 60-hour weeks. Mr. Copley's overtime rate of pay is $59.208 ($39.472 x 1.5). For him to earn $17,000 in overtime wages in a year, he would have to, on average work 5.52 hours of overtime a week ($17,000/$59.208/52 weeks). Mr. Copley has not demonstrated that an average 45.52-hour work week is unreasonable under the circumstances. Accordingly, we overrule the assignment of error to the extent it challenges the indefinite spousal support award based on the trial court's consideration of overtime wages.

**{¶28}** With regard to living expenses, we observe that " '[a] party's living expenses are not one of the specifically enumerated factors to be considered when determining spousal support.' " *Albrecht v. Albrecht*, 11th Dist. Trumbull No. 2013-T-0124, 2014-Ohio-5464, ¶ 16, quoting *Romano v. Jennison*, 11th Dist. Lake No. 2005-L-191, 2006-Ohio-6887, ¶ 19. " 'Thus, the trial court's consideration of a party's living expenses "is discretionary and may be considered if the court finds such expenses to be relevant." ' " (Emphasis deleted in *Albrecht*.) *Id.*, quoting *Romano* at ¶ 19, quoting *Derrit v. Derrit,* 163 Ohio App.3d 52, 2005-Ohio-4777, 836 N.E.2d 39, ¶ 32 (11th Dist.); *see*

R.C. 3105.18(C)(1)(n) (the court shall consider "[a]ny other factor that the court expressly finds to be relevant and equitable").

{¶29} Even though the trial court was not obligated to consider the parties' living expenses under R.C. 3105.18(C)(1), it did so, purporting to list in its spousal support decision all of the expenses to which the parties had testified. The court later stated that it had "considered all of the evidence" when it made the support award, but its list of Mr. Copley's expenses omitted more than half of the expenses to which he had testified— insurance on the camper, fuel oil, cell phone, dry cleaning and laundry, life insurance, auto insurance, federal and state income taxes, Medicare and Social Security withholding, union dues, 401K contributions, and health, dental, and vision insurance. In another section of the decision, the court discussed the health, dental, and vision insurance expenses, but it did not mention any of the other omitted expenses.

{¶30} Once the court decided to consider the parties' living expenses, it acted unreasonably when it disregarded many of the expenses to which Mr. Copley had testified without explanation. We can only speculate as to how consideration of this testimony would have impacted the court's determination of the amount and duration of the support award. Accordingly, we sustain the assignment of error to the extent it asserts that the trial court abused its discretion when it made the indefinite spousal support award without considering all of Mr. Copley's testimony regarding his expenses.

{¶31} We reverse the trial court's judgment to the extent it awarded indefinite spousal support and remand for the court to make a new support determination in accordance with law and this decision. This decision renders moot Mr. Copley's other arguments about the indefinite spousal support award, i.e., that the duration of the award

is inappropriate and that the court failed to adequately articulate the basis for the amount and duration of the award, so we do not address them. We emphasize that our decision should not be interpreted as a statement on the credibility of Mr. Copley's testimony regarding his expenses, the weight the trial court should give that testimony on remand, or whether a $2,200 a month indefinite spousal support award would be appropriate and reasonable based on the evidence in this case.

## IV. CONCLUSION

**{¶32}** For the foregoing reasons, we sustain the assignment of error in part and overrule it in part. We affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
     Michael D. Hess, Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**