[Cite as *Vernell v. Vernell*, 2022-Ohio-1510.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| ANTHONY VERNELL, | : | |
| | : | Case No. 21CA2 |
| Plaintiff-Appellant, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| JEANNE M. VERNELL, | : | |
| | : | **RELEASED: 05/02/2022** |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

K. Robert Toy, Toy Law Office, Athens, Ohio, for Appellant.

Zachary L. Tidaback, Mollica, Gall, Sloan & Sillery Co., LPA, Athens, Ohio, for Appellee.
_____

Wilkin, J.

{¶1} Appellant, Anthony Vernell, appeals the Athens County Court of Common Pleas judgment entry modifying his spousal support obligation to $2,800 per month. In appellant's three assignments of error, he challenges the trial court's modification order in which the court reduced the spousal support obligation by $200, when appellant's income decreased from $115,000 to approximately $62,000.

{¶2} Appellant first argues the trial court erred in not considering a medical malpractice settlement he shared with appellee, Jeanne M. Vernell, as a lump sum spousal support payment. He further claims the court failed to include appellee's annuities as income. In the second assignment of error, appellant maintains that with his decreased income and current expenses, the spousal

support payment of $2,800 does not leave him with sufficient funds to live on. Finally, appellant asserts the court failed to consider the standard of living factor in relation to COVID-19.

{¶3} Because the trial court failed to explain the reason for not considering all submitted expense evidence and its grounds to reduce the balance to one of appellant's checking accounts, we conclude the trial court abused its discretion. We reverse the spousal support modification order and remand the matter to the trial court to issue a new modification order.

PROCEDURAL BACKGROUND AND FACTS

{¶4} In April 2011, appellant and appellee divorced after 25½ years of marriage. The divorce decree divided the parties' marital assets and included a spousal support order of appellant paying appellee directly $3,000 per month. The spousal support was for life subject to the court's continued jurisdiction to modify or terminate the spousal support upon a showing of a change of circumstances, appellee's remarriage and/or cohabitation with a person of the opposite sex, or the death of either party.

{¶5} While the divorce proceedings were pending, the parties' adult daughter passed away after suffering an anaphylactic reaction on October 3, 2008. Appellant filed a medical malpractice complaint. Although appellee was not a party to the medical malpractice action, appellant informed the court that he intends to equally divide any monetary award with appellee. Appellant followed through, and, even though the divorce was finalized at that point, gave appellee

the sum of $333,333.33 when the medical malpractice case settled for

$1,000,000.[1]

{¶6} Years later, on April 15, 2020, appellant filed a motion to terminate

spousal support.  In his motion, appellant asserted the change of circumstances

was his retirement resulting in a significant reduction in his income.  He further

claimed that appellee no longer requires his financial support.  A hearing on the

motion was held on September 21, 2020.

{¶7} At the hearing, appellant testified he is 68 years of age and retired in

September 2019.  He was eligible to retire since he was 67 years of age and had

been working for 30 years.  And it was time for him to retire because driving at

night was an issue for him and his employment required a lot of travelling.  Prior

to retirement, his annual income was $115,000, but now it is significantly less in

which he receives monthly net income of $2,421.29 from pension and $2,659

from social security.  Accordingly, appellant's total monthly net income is

$5,080.29.

{¶8} Appellant next identified Exhibit B that lists his monthly expenses of

$712.33 for mortgage, $76.60 water bill, $49.99 internet, $115.79 Direct TV, and

$51.15 (every three months) trash bill, and yearly expenses of $1,000 auto

insurance, $849 home insurance, and $4,714.47 property taxes.  Appellant also

testified he has monthly expenses of $432 car payment, $250 credit card, and

$246 for timeshare property.

---

[1] Appellant's attorney received one-third of the settlement money.

{¶9} On cross-examination, appellant was questioned regarding the balances in his bank and investment accounts. Appellant has two Ameriprise financial accounts totaling $455,000, a Roth IRA with a balance of $64,000, and a mutual fund annuity with a balance of $169,000. Further, appellant indicated that his checking and savings accounts with Ohio University Credit Union ("OUCU") per his submitted exhibits indicate a balance of $20,236 and $30,746, respectively. However, the checking account is now less because since that statement appellant paid his monthly spousal support obligation out of that account. Appellant also has checking and savings bank accounts with PNC Bank. According to appellant, the balances in his PNC Bank accounts per his exhibits are outdated, in which the checking account had a balance of $16,509, but since then appellant paid the property taxes, his car and home insurance bills, and utilities out of that account. The savings account at PNC Bank has more money than the $87,000 per the submitted statement because of the inheritance appellant received after his mother passed away.

{¶10} Appellant explained the spousal support of $3,000 is "depleting" his pension account and he does not know "how much longer I could continue to do that."

{¶11} Appellee also testified at the hearing. She is permanently disabled and moved to Florida on the advice of her medical physician. She resides in a golf cart community in the event she is unable to drive due to health reasons. Other than the spousal support, appellee's main source of income is the disability benefits she receives through Ohio Public Employees Retirement System

("OPERS") in the amount of $1,666.  Appellee explained, however, that as soon as she turns 65 years of age, the benefits will be converted to retirement payments and will decrease to $1,253.  Appellee now also receives monthly payments of $563 from her annuity investment with Catholic Ladies of Columbia ("CLC") to cover her car payment and car insurance.  The CLC annuity has a balance of $53,455.22.  The other investments appellee has are two annuities totaling $271,799.41, and an IRA account, $228,747.39.  The two annuities, however, are not accessible until appellee reaches the age of 72.

{¶12} Appellee provided the court with a comprehensive list of her monthly and yearly expenses.  The monthly expenses total $3,648 and include: $404.76 car payment; $51.80 cell phone; $100 clothing; $250 credit card; $80 dining out; $100 donation to church; $175 electric; $50 entertainment; $50 gasoline; $530 groceries; $100 hair salon; $77.33 internet; $33.35 streaming services; $60 membership to Massage Envy; $144.60 Medicare; $822.86 mortgage; $410 prescriptions; and $208.30 water/amenities.  The yearly expenses according to appellee total $18,080.20 and include: $964 car insurance; $46.48 car registration; $780 car/golf cart maintenance; $75 association fee; $876 homeowners hazard insurance; $2,544 home maintenance; $72.24 vision insurance; $411.84 dental insurance; $1,303.80 out of pocket medical/dental expenses; $1,133.06 pet care; $2,415.78 property taxes; $162 garbage/recycle; $6,950 federal taxes; and $600 travel/memberships.  Appellee maintains she requires the spousal support in order to pay her bills.

**{¶13}** At the conclusion of the hearing, the magistrate took the matter under advisement.  On November 3, 2020, the magistrate issued a written decision finding a change of circumstances warranting modification of the spousal support.  Appellant was eligible to retire and did not retire simply to avoid or decrease his spousal support obligation.  The court then applied the factors in R.C. 3105.18(C)(1) first finding that appellant's annual income decreased from $115,000 to $62,169.60, and appellee's annual income was $23,150.64.  With regard to their age and physical condition, appellant is 68 years of age and other than slowing down due to his age, did not express any other physical ailment.  Appellee, on the other hand, is 64 years of age and will turn 65 on July 24, 2021, and is permanently disabled and suffers from fibromyalgia, post-traumatic stress disorder, depression and anxiety.

**{¶14}** Both appellant and appellee have investment accounts.  Appellant has investment accounts totaling $668,000, and appellee's investments total $554,002.02.  The magistrate, however, stated that a large portion of appellee's assets are contained within two "annuities with Merrill Lynch that she cannot access until age 72."  Appellant and appellee each have checking and savings accounts, in which he has a total balance of $145,591, and appellee has a total balance of $28,076.35.  As for the expenses, the magistrate made the following findings:

> Movant testified to a budget that results in annual expenses of approximately $24,000.00.  He did not include such things as car insurance, car registration, estimated federal taxes, to name a few, that Respondent included on her budget.  Removing estimated federal taxes and home maintenance from Respondent's budget modifies her yearly expenses to $8,840.20.  Respondent's monthly

expenses total $3,648.00. Totaling these expenses results in annual expenses of $52,616.20 - more than twice Movant's annual expenses. It does not appear that Respondent has artificially inflated her budget, but, rather, that her budget is much more detailed and includes expenses that Movant didn't, such as food[,] groceries.

{¶15} The magistrate also indicated appellant was remarried and his spouse has an annual income of $38,000. As for tax consequences, the magistrate continued the previous order of the spousal support being taxable as income for appellee and a deduction for appellant. The magistrate then recommended a reduction to appellant's spousal support obligation to $2,800 per month effective January 1, 2021.

{¶16} Appellant filed objections to the magistrate's recommendation. First, he challenged the magistrate's failure to consider the $333,333.33 settlement as a lump sum spousal support payment. Second, he argued there was error in failing to include appellee's two annuities as a source of income. Third, appellant maintained the modified spousal support is not reasonable with the significant decrease in his income after retiring. According to appellant, he cannot afford paying the spousal support. Finally, appellant claimed the magistrate failed to consider the standard of living factor.

{¶17} Appellee filed a written response negating appellant's claims in which there is no caselaw supporting his argument the settlement money should be considered as a lump sum spousal support payment. Additionally, the annuities were considered by the magistrate but they are not accessible to appellee until she reaches the age of 72. Further, appellant had the burden of proof and he failed to demonstrate how his standard of living changed. Finally,

there was no error since appellant's income is greater than appellee and he has significant assets.

{¶18} The trial court overruled appellant's objections finding the lump sum money was considered since the money was used as funding of appellee's two annuities.  However, the annuities are not accessible to appellee until she reaches 72 years of age.  Moreover, based on the difference of the parties' income, $62,169.60 compared to $23,150.64, the order of $2,800 spousal support was not in error.  The trial court then adopted the magistrate's recommendation and modified the spousal support to $2,800 per month also effective January 1, 2021.  The trial court retained jurisdiction and held that spousal support will remain in effect for life or until there is a change of circumstances, death of either party, or appellee's cohabitation with a person of the opposite sex and/or remarriage.  The modification order is now before us on appeal.

### ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED BY FAILING TO PROPERLY CHARACTERIZE, ACCOUNT FOR, AND CONSIDER THE $333,333.33 WRONGFUL DEATH SETTLEMENT GIVEN TO DEFENDANT FROM PLAINTIFF IN 2011 (GIVEN FROM PLAINTIFF TO DEFENDANT AFTER THE APRIL 20, 2011 FINAL DECREE AND NOT CONSIDERED IN FINAL DECREE).

II.    THE TRIAL COURT ERRED BY ORDERING PLAINTIFF TO PAY SPOUSAL SUPPORT OF $2,800 AS PLAINTIFF CANNOT AFFORD TO PAY IT AS IT LEAVES HIM WITH BASICALLY NO INCOME AFTER PAYMENT AND DEFENDANT DOES NOT HAVE A NEED FOR THIS

MONEY AS HER STANDARD OF LIVING HAS
IMPROVED SINCE DIVORCE.

III.     NOT TAKING COVID-19 INTO ACCOUNT WHEN
         CONSIDERING THE "STANDARD OF LIVING" FACTOR
         FOR THE R.C. § 3105.18(C)(1) ANALYSIS[.]

{¶19} In the first assignment of error, appellant argues the trial court erred by failing to consider the settlement amount of $333,333.33 as a lump sum spousal support payment. Further, he claims the court did not follow the statutory definition of income by not taking into account appellee's annuities, part of which were funded by the settlement money. In conclusion, appellant maintains the trial court failed to adequately analyze the factors in R.C. 3105.18(C)(1).

{¶20} Appellant's second assignment of error challenges the numerical aspect of the trial court's order and claims he cannot afford to pay the $2,800 spousal support obligation. Appellant first asserts the trial court failed to consider all his yearly expenses including his home and car insurance. Additionally, even though he testified to the additional monthly liability of $250 towards his credit card bill, the court's order did not reflect that evidence. And when his expenses are accurately calculated, the spousal support order of $2,800, leaves appellant with just $80.08 a month. Appellant thus maintains that the order unreasonably punishes him while appellee resides in a golf cart community and elects not to live off of the settlement money.

{¶21} In the final assignment of error, appellant argues there was insufficient evidence to analyze the standard of living factor due to the COVID-19

pandemic. But at the same time, he testified to the best of his abilities of how his standard of living changed as he travels less now.

**{¶22}** Appellee disputes appellant's arguments and states there is no evidence that the settlement money was a lump sum spousal support payment, and two of appellee's annuities are not accessible until she reaches the age of 72. Second, the trial court's order is warranted since appellant's income is more than double that of appellee. Finally, appellant had the burden to demonstrate a change in his standard of living and he should not be entitled to a new hearing to present additional evidence.

**{¶23}** We will address all assignments of error together as they are interrelated and because we conclude the trial court's modification was unreasonable for failing to take into consideration all the evidence presented.

## I.      STANDARD OF REVIEW AND LAW

**{¶24}** "A trial court lacks jurisdiction to modify a prior order of spousal support unless the decree of the court expressly reserved jurisdiction to make the modification[.]" *Mandelbaum v. Mandelbaum*, 121 Ohio St. 3d 433, 2009-Ohio-1222, 905 N.E.2d 172, paragraph two of syllabus. If the trial court retained jurisdiction, it subsequently must find "(1) that a substantial change in circumstances has occurred and (2) that the change was not contemplated at the time of the original decree." *Id.* "The party seeking a modification of spousal support has the burden of proving a changed circumstance justifying a change in the level of spousal support." *Carlisle v. Carlisle*, 180 Ohio App.3d 569, 2009-Ohio-215, 906 N.E.2d 483, ¶ 10 (4th Dist.), citing *Joseph v. Joseph*, 122 Ohio

App.3d 734, 736, 702 N.E.2d 949, (2d Dist.1997). "[I]f the court determines that a change of circumstances exists, it must then determine the amount of spousal support that is appropriate and reasonable." *Cassidy v. Cassidy*, 4th Dist. Pike No. 03CA721, 2005-Ohio-3199, ¶ 29. R.C. 3105.18(F)(1) outlines the preceding law as follows:

> a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses, or other changed circumstances so long as both of the following apply:
> (a) The change in circumstances is substantial and makes the existing award no longer reasonable and appropriate.
> (b) The change in circumstances was not taken into account by the parties or the court as a basis for the existing award when it was established or last modified, whether or not the change in circumstances was forseeable.

**{¶25}** "If a change of circumstances has occurred, the court then decides if spousal support is appropriate and reasonable based on the [] factors listed in R.C. 3105.18(C)(1)[.]" *Bishman v. Bishman*, 4th Dist. Washington No. 07CA30, 2008-Ohio-1394, ¶ 13. R.C. 3105.18(C)(1) provides that:

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b) The relative earning abilities of the parties;
> (c) The ages and the physical, mental, and emotional conditions of the parties;
> (d) The retirement benefits of the parties;
> (e) The duration of the marriage;
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶26} In considering the factors in R.C. 3105.18(C)(1), a trial court

must consider all of the statutory factors and not base its determination upon any one factor taken in isolation. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. Additionally, although a trial court possesses broad discretion to determine whether spousal support is reasonable and appropriate, it must consider the statutory factors and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law. *Kaechele* at paragraph two of the syllabus.

*Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380, ¶ 13 (4th Dist.).

{¶27} "The trial court is afforded wide latitude in determining spousal-

support issues, including issues regarding the modification of spousal support."

*Carlisle*, 180 Ohio App.3d 569, 2009-Ohio-215, 906 N.E.2d 483, ¶ 10 (4th Dist.),

citing *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 122, 551 N.E.2d 157 (1990).  "An

appellate court will not reverse a determination on spousal support unless the

trial court has abused its discretion."  *Id.*  An abuse of discretion "is more than a

mere error of law or judgment; it implies that a trial court's decision was unreasonable, arbitrary or unconscionable." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 27, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶28} "In making this highly deferential review, an appellate court may not freely substitute its judgment for that of the trial court." *Carlisle* at ¶ 10, citing *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). " '[A]n appellate court reviews the factual findings to support that award under a manifest weight of the evidence standard.' " *Tittle v. Tittle*, 4th Dist. Pickaway No. 19CA38, 2021-Ohio-1571, ¶ 12, quoting *Freeland v. Freeland*, 4th Dist. Jackson No. 02CA18, 2003-Ohio-5272, ¶ 14. "If the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award." *Martindale v. Martindale*, 4th Dist. Athens No. 18CA17, 2019-Ohio-3028, ¶ 90, citing *Eichenlaub*, 2018-Ohio-4060, ¶ 13.

## II.    ANALYSIS

{¶29} As appellant in general challenges the spousal support obligation in proportion to his income and expenses, we will review the trial court's determination of the parties' income, assets, expenses, appellant's current wife's income, and the trial court's evaluation of the standard of living factor. We are mindful the trial court was faced with the difficult task of resolving incomplete and inconsistent evidence presented by appellant and appellee.

{¶30} We want to first address appellant's argument that the settlement disbursement of $333,333.33 should be considered as a lump sum spousal support payment. Appellant does not support his claim with any legal authority. Second, the settlement money was contemplated at the time of the divorce. In the divorce decree, the trial court mentioned the allocation of potential settlement money based on appellant's assertions:

> Plaintiff, individually and as Administrator of his daughter's estate, has filed a medical malpractice action. Defendant is not a party to that action and was opposed to its filing. Plaintiff testified that he is willing to share any monetary award with Defendant equally.

After the divorce, appellant adhered to his testimony and equally shared the $1,000,000 settlement money with appellee. Finally, even after providing appellee with her share of the settlement money, appellant continued to pay his monthly $3,000 spousal support obligation. This demonstrates appellant did not consider the settlement money as spousal support. We therefore conclude that the lump sum settlement money is not a spousal support payment and the trial court did not commit any error.

### A. Income

{¶31} A trial court when considering the parties' income, must consider their income "from all sources." R.C. 3105.18(C)(1)(a). During the hearing, appellant and appellee testified and submitted exhibits of their source of income. Appellant has two sources of income: monthly social security, $2,659 and net pension in the amount of $2,421.29. The evidence presented at the hearing demonstrated that his total net monthly income is $5,080.29. Appellee, on the other hand, has three sources of income including the spousal support. Without

the spousal support, appellee receives a gross monthly payment out of her CLC annuity of $676, and since reaching the age of 65 in July 2021, her disability benefit of $1,666, converted to a retirement payment of $1,253.22. Thus, appellee's gross monthly income is $1,929.22 after July 2021.[2] When multiplying the parties' monthly income by 12, appellant's yearly net income is $60,963.48, while appellee's gross income is $23,150.64.

{¶32} The trial court did not consider appellee's two annuities that total $271,799.41 as income. We find no error. Appellee does not receive any payments from these annuities, and she cannot withdraw any money from them until she reaches the age of 72. Moreover, appellant has no issue with the trial court considering his annuity as an asset and not deeming it as income.

{¶33} The trial court calculated appellant's yearly income as $62,169.60. The court deduced that amount based partly on appellant's gross pension payment of $2,521.80. This is consistent with one of the exhibits submitted by appellant but not a more recent exhibit. According to an April 2020 payment stub, appellant's gross monthly pension is $2,531.38. The difference is marginal but we point it out to reflect the inconsistencies the trial court was tasked to resolve.

### B. Assets

---

[2] The trial court's modification order effective January 1, 2021, prematurely reduced appellee's income on the basis of the retirement amount of $1,253.22. Appellant, however, did not challenge this aspect of the order in his objection or here. We will therefore proceed with that amount as appellee's income as well.

**{¶34}** The trial court properly determined the parties' retirement benefit assets with appellant having an amount of $688,000 and appellee with $554,002.02. We outline below each party's account and amount:

|  | Appellant | Appellee |
|---|---|---|
| IRA | $455,000 | $228,747.39 |
| Roth IRA / Annuity | $64,000 | $271,799.41 |
| Annuity | $169,000 | $53,455.22 |
| Total | $688,000 | $554,002.02 |

**{¶35}** The parties' checking accounts and savings accounts were also considered as assets by the trial court. Appellant has two checking and two savings accounts, while appellee has one checking and one savings account. Both presented exhibits demonstrating the actual amount in the accounts as of May/June 2020. Appellant testified, however, that his checking account with OUCU has less money because since submitting his accounting, he paid the monthly spousal support payment. His checking account with PNC Bank also has less money after paying the property taxes, car and home insurance, and utilities. At the same time, one of his savings accounts has more money due to funds he inherited after the death of his mother. Appellant failed to provide the trial court with specific amounts of his accounts at the time of the hearing. Based on the exhibits submitted, appellant and appellee's checking and savings accounts have the following amounts:

|                              | Appellant    | Appellee       |
|------------------------------|--------------|----------------|
| Checking Account 1 - OUCU    | $20,236      | $15,957.68     |
| Checking Account 2 - PNC     | $16,509      | Not Applicable |
| Savings Account 1            | $30,746      | $12,118.67     |
| Savings Account 2            | $87,000      | Not Applicable |
| Total                        | $154,491     | $28,076.35     |

{¶36} The trial court determined appellant's account balances as $145,591 and appellee with $28,076.35. We are unable to determine with certainty the $9,000 reduction in appellant's balance by the trial court. It could represent appellant's payment of three months of spousal support but without an explanation of the trial court's conclusion as to appellant's account balance, we would be speculating. This is compounded by the trial court's lack of rationalization for not reducing appellant's PNC Bank checking account with the expenses he paid out of that account. The trial court failed to explain with sufficient detail the reduction of balance from one of appellant's checking accounts and not the other.

## C. Expenses

{¶37} A trial court is not required to consider the parties' living expenses since it is not one of the enumerated factors in R.C. 3105.18(C)(1). *See Copley v. Copley*, 4th Dist. Pike No. 19CA901, 2020-Ohio-6669, ¶ 28. The trial court, however, has the discretion to consider the expenses if it finds the expenses to

be relevant.  *Id.*; R.C. 3105.18(C)(1)(n).  But once the trial court elects to consider the parties' living expenses, it acts unreasonably when it disregards expenses without an explanation.  *Copley* at ¶ 30.

{¶38} In the case at bar, the trial court considered the parties expenses under R.C. 3105.18(C)(1)(i), liabilities of the parties, as opposed to any other factor per R.C. 3105.18(C)(1)(n).  Furthermore, the court determined appellant's total yearly expenses to be $24,000, while appellee's at $52,616.20, but failed to explain with sufficient detail why it did not consider all the expenses submitted.  Accordingly, we are unable to reconcile that conclusion with the evidence.  There is no question appellee submitted a more inclusive budget than appellant, in which she submitted a separate yearly expense list and a monthly list.  Below are two tables breaking down the yearly and monthly expenses for each, respectively:

| *Yearly Expenses* | Appellant | Appellee |
|---|---|---|
| Car Insurance | $1,000 | $964 |
| Car Registration | Not Submitted | $46.48 |
| Car / Golf Cart Maintenance | Not Submitted | $780 |
| Homeowners Association Fee | Not Submitted | $75 |
| Homeowners Insurance | $849[3] | $876 |
| Home Maintenance | Not Submitted | $2,544 |

---

[3] This amount is based on the exhibit submitted by appellant and not his testimony at the hearing of the cost being $936.

| | | |
|---|---|---|
| Health Insurance | Not Submitted | $0.00 |
| Vision Insurance | Not Submitted | $72.24 |
| Dental Insurance | Not Submitted | $411.84 |
| Out of Pocket Medical/Dental | Not Submitted | $1,303.80 |
| Pet Care Expenses | Not Submitted | $1,133.06 |
| Property Taxes | $4,714.47 | $2,415.78 |
| Garbage / Recycle | $204.60 | $162 |
| Federal Taxes | Not Submitted | $6,950 |
| Travel / Memberships | Not Submitted | $600 |
| Total | $6,768.07 | $18,334.20 |

| *Monthly Expenses* | Appellant | Appellee |
|---|---|---|
| Car Payment | $432 | $404.76 |
| Cell Phone | Not Submitted | $51.80 |
| Clothing / Incidentals | Not Submitted | $100 |
| Credit Card | $250 | $250 |
| Dining Out | Not Submitted | $80 |

| | | |
|---|---|---|
| Donations / Church[4] | Not Submitted | $100 |
| Electric Bill | Not Submitted | $175 |
| Entertainment | Not Submitted | $50 |
| Gasoline | Not Submitted | $50 |
| Groceries | Not Submitted | $530 |
| Hair Salon | Not Submitted | $100 |
| Internet Service | $49.99 | $77.33 |
| Streaming Services / Cable | $115.79 | $33.35 |
| Massage Envy membership | Not Submitted | $60 |
| Medicare | Not Submitted | $144.60 |
| Mortgage | $712.33 | $822.86 |
| Prescriptions | Not Submitted | $410 |
| Savings | Not Submitted | $0.00 |
| Water / Sewer & Amenity Fee | $76.60 | $208.30 |
| Timeshare | $246 | Not Submitted |
| Total | $1,882.71 | $3,648 |

---

[4] The trial court at the initial determination of spousal support discounted appellee's "charitable donations, * * * , cleaning service, and pool maintenance are not necessities and could be eliminated or decreased."

{¶39} We will begin with appellant's expenses. When we multiply his total monthly expenses, $1,882.71, by 12 and adding the total from the yearly expense table above, $6,768.07, appellant's total yearly expenses are $29,360.59. Our sum is substantially more than the trial court's determination of $24,000. The discrepancy is due to the trial court's failure to include all of appellant's expenses and/or explain why they were not considered. The trial court following its conclusion of appellant's expenses at $24,000, states: "appellant did not include such things as car insurance[.]" On the other hand, the trial court included that expense when outlining the facts in its decision. In addition, when reviewing the court's decision, there is no mention of appellant's monthly credit card expense of $250 and the $246 he pays for his current wife's timeshare property, both of which he testified to at the hearing. The trial court failed to provide an explanation for discounting these expenses.

{¶40} With regard to appellee's expenses, the trial court made the following finding:

> Removing estimated federal taxes and home maintenance from Respondent's budget modifies her yearly expenses to $8,840.20. Respondent's monthly expenses total $3,648.00. Total these expenses results in annual expenses of $52,616.20.

{¶41} The trial court's calculation is accurate but lacks sufficient detail why only the federal taxes and home maintenance were discounted when appellee submitted other expenses that appellant failed to disclose.

D. Appellant's Current Spouse's Income

{¶42} "While a new spouse's income cannot be considered in determining an obligor's ability to pay spousal support, the court may consider the fact that

the obligor directly benefits from sharing living expenses with his new wife." *Preseren v. Preseren*, 8th Dist. Cuyahoga No. 96431, 2011-Ohio-5181, ¶ 16, citing *Feldman v. Feldman,* 8th Dist. Cuyahoga No. 92015, 2009-Ohio-4202.

{¶43} Appellant testified that he remarried and that his new spouse of eight years is employed with an annual income of $38,000. The trial court in its decision mentioned appellant's new spouse's income but we are unable to ascertain if it was properly considered as a benefit to appellant for sharing living expenses. The trial court did not list the $38,000 when considering appellant's expenses. Rather, prior to its conclusion, the trial court simply stated: "Movant is remarried and his current spouse has an annual income of approximately $38,000.00."

{¶44} Exclusive of appellant's current spouse's income as an aid to pay for his expenses, and based on appellant's yearly income of $62,169.60 and total yearly expenses of $29,360.59, appellant is left with $32,809.01 to pay for the spousal support. The modified monthly spousal support of $2,800 multiped by 12 is $33,600. This leaves appellant in the negative with the requirement to dip into his assets. The trial court, however, may have considered appellant's current spouse's income as a benefit for sharing living expenses but without an explanation we are left to speculate.

E. Standard of Living

{¶45} The trial court under this factor held that "Other than Movant's testimony that he stays home more and doesn't eat out as much, there was no testimony presented that either party's standard of living has changed since the

divorce." Appellant disputes the trial court's conclusion for failing to consider the impact of the COVID-19 pandemic and further that he testified to the best of his ability of how his standard of living changed. We disagree and find no error by the trial court's conclusion.

{¶46} Appellant did not present any evidence of a change in his standard of living during direct examination. On cross-examination appellant was asked: "Can you tell me how, or explain to the court how your standard of living has changed?" Appellant responded:

> Well um, I don't travel as much. Um, we don't go out to eat much any, as far, well now the pandemic there's not much of that anymore anyway, but yeah. Um, so I stay home a lot. I, I'll just say that. As far as my standard of living goes, I, I stay home.

{¶47} Appellant in redirect examination continued to be vague in his answer. Appellant's counsel questioned him "have you done anything that you would normally do that you can't do anymore because you have more expenses?" Appellant stated:

> Ah, I think probably the biggest thing is traveling, but um, um, you know I just do simple things now. If I can go fishing, I'll go fishing cause it doesn't, you know, but ah, ah, yeah. I've, I've just slowed down in general. I, I, I ah, I really don't[.]

{¶48} Additionally, when explaining why he retired, appellant testified that he elected to retire after eligibility because his employment required him to travel a lot and that was a big problem for him. "[T]he burden of proof in a motion to modify or terminate spousal support is on the movant; appellee did not have the burden to prove any of the factors listed above." *Kemp v. Kemp*, 5th Dist. Delaware No. 20 CAF 11 0050, 2021-Ohio-2419, ¶ 28. We therefore conclude

that the trial court did not err in its evaluation of the evidence submitted at the

hearing and reject appellant's argument.

## III.     REMAND ORDER

**{¶49}** We have previously held that a trial court acts unreasonably when it

fails to consider all expenses admitted in evidence without providing an

explanation:

> Once the court decided to consider the parties' living expenses, it acted unreasonably when it disregarded many of the expenses to which Mr. Copley had testified without explanation. We can only speculate as to how consideration of this testimony would have impacted the court's determination of the amount and duration of the support award. Accordingly, we sustain the assignment of error to the extent it asserts that the trial court abused its discretion when it made the indefinite spousal support award without considering all of Mr. Copley's testimony regarding his expenses.

*Copley*, 2020-Ohio-6669, ¶ 30.

**{¶50}** In *Warner v. Warner*, this court reversed a trial court's spousal

support order for failing to "fully consider or appreciate the parties' net monthly

incomes and reasonable monthly expenses[.]"  4th Dist. Scioto No. 12CA3511,

2013-Ohio-478, ¶ 13.  The Ninth District Court of Appeals similarly reversed a

spousal support decision holding the trial court acted unreasonably for failing to

consider husband's testimony regarding his modified expenses.  *Uphouse v.*

*Uphouse*, 9th Dist. Summit No. 27623, 2016-Ohio-95, ¶ 10.

**{¶51}** In the matter at hand, the trial court failed to provide an explanation

for its numerical findings, a deduction of $9,000 as to appellant's checking

account balance with OUCU, and not allocating all expenses to each party. We

thus reverse the modification order and remand the matter to the trial court to

make a new spousal support determination in accordance with our decision. We

emphasize that "our decision should not be interpreted as a statement on the

credibility" of the witness' testimony regarding expenses, "the weight the trial

court should give that testimony on remand," or whether the $2,800 spousal

support award would be appropriate and reasonable based on the evidence in

this case. *Copley* at ¶ 31.

CONCLUSION

**{¶52}** The trial court failed to explain with sufficient detail why it did not

consider all the expenses submitted in evidence and why the court reduced

appellant's checking balance with OUCU. Based on these errors, we conclude

the trial court's order modifying the spousal support payment to be unreasonable.

The order is reversed and the matter is remanded for the court to make a new

support determination in accordance with law and this decision.


**JUDGMENT REVERSED. CAUSE REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED.  Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
        Kristy S. Wilkin, Judge


### **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**